MOREAU v. MASSACHUSETTS MUT. LIFE INS. CO.
No. 1028 A.

District Court, W. D. New York.
May 21, 1934.

Baker & Cookman, of Niagara Falls, N. Y., for plaintiff.

Dudley, Stowe & Sawyer, Roy P. Ohlin, and Mason O. Damon, all of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

A policy of life insurance in the sum of $5,000 was issued to Robert C. Moreau on April 27, 1926. Plaintiff was the beneficiary therein named. Insured died August 24, 1932. The question at issue is whether such policy of insurance lapsed for nonpayment of the premium.

The application for the insurance was dated April 18, 1926. It states that the first premium had not been paid, and also contains this provision: "I understand and agree: (1) that if I shall not have paid the amount of the premium on the insurance herein applied for to the company's agent at the time of making this application, such insurance shall not be in force until the approval of this application by the company at its Home Office, the payment of the first premium as required therein, and the delivery of the policy to me or my agent during my lifetime; and that thereupon said policy shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins."

The application also contained this question and answer: "How do you wish to pay the premium? A. C—Quarter-annually in advance." The following provision appears in the policy: "Premium, if payable quarterly, $46.15 upon delivery of this policy and like amount on the 21st day of each July, October, January, and April thereafter." The policy also specified that the premiums were payable in advance, and, if any premiums were not paid before the expiration of the grace period, the policy would lapse, provided there were no provision for automatic payment applicable. The grace period was therein fixed as 31 days after any premium, except the first, became due. The face of the policy bears this indorsement: "Policy year and interest begin April 21, 1926."

It is conceded that under certain provisions of the policy the defendant is liable to the plaintiff in the sum of $1,261.94. Defendant denies liability in any other amount.

On July 6, 1932, defendant mailed insured a notice stating that the due date of the next quarterly premium was July 21, 1932. This notice also contained the statement that the policy would be forfeited and become void, if such premium were not paid by or before such due date, or within the grace period of 31 days. Plaintiff claims that on August 24, 1932, plaintiff mailed a check for the amount of the aforesaid premium to defendant's agent at Lawrence, Mass. Insured died on the last-mentioned day. The check was dated August 20, 1932, and it was received by the defendant's agent and credited to plaintiff prior to the agent's knowledge of insured's death. A telegram was sent to defendant's agent advising him that the premium check had been mailed, and requesting that the policy not be lapsed. The agent, then unaware of insured's death replied, that he "would take care of the policy" if the check were received. There were no funds in bank to meet the check when issued. Such funds were made available after insured's death.

Plaintiff seeks to support her cause of action on several contentions.

■ It is claimed that defendant company waived the forfeiture for nonpayment of premium in question. The basis for this is the claim that the general agent of the company had repeatedly waived delayed payments of premiums on this policy and kept the policy in force. The only proof of the payment of any premium after the expiration of any grace period, except the premium in question, is as regards the premium due, as claimed by the defendant, on April 21, 1932. That premium payment was tendered May 23, 1932. Defendant refused to accept it until an application for reinstatement had been made and accepted. Such application was executed June 1, 1932, and it contains a recital that the policy lapsed for nonpayment of premium due April 21, 1932. There is plenty of authority for the proposition that an insurance company may do or fail to do certain things which constitute a waiver. There was, however, nothing in connection with the payment of the April premium which amounts to a waiver. The requiring of an application for reinstatement refutes the claim that there was any waiver. Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 252, 26 L. Ed. 765; Smith v. New England Mutual Life Ins. Co. (C. C. A.) 63 F. 769; Columbian National Life Ins. Co. v. Morey (C. C. A.) 26 F. (2d) 580.

■ It is also claimed that the acceptance of the check dated August 20, 1932, and the communication from defendant's agent stating that the premium would not be lapsed on receipt of the check, constitute a waiver of forfeiture. Since defendant then had no knowledge of insured's death, a waiver can-

104

not be predicated on the communication. Horstmann v. Capital Life Ins. Co., 194 Mo. App. 434, 184 S. W. 1164; 2 May on Insurance, § 566, p. 1205; Bliss on Life Insurance, § 190. In refutation of any intention to waive, it appears that the premium paid was promptly tendered back. Again, the agent had no authority to waive. The policy specifically provided that it could not be modified or altered without the approval of certain of defendant's officers. The agent was not included in such officers. In default of knowledge that the agent was exceeding his authority or acquiescence in practice of permitting waivers, no waiver could be shown. Conway v. P. M. L. Ins. Co., 140 N. Y. 79, 35 N. E. 420.. The contention that the defendant has waived forfeiture cannot be sustained.

Plaintiff claims that there is ambiguity in the insurance policy as to the date of the commencement of the premium payment period, and that such ambiguity is to be resolved in favor of the further contention that such period began April 27, 1926, the date of the execution of the policy.

Life insurance is a contract whereby the insured agrees to pay certain sums, called premiums, at specified times, and in consideration thereof the insurer agrees to pay certain sums of money on certain conditions and in specified ways. The terms of such contract are quite uniformly prepared with great care by the insurer and with the purpose to protect its interest in all reasonable ways. The insured usually has not the opportunity to learn every detailed provision of a policy. He depends largely upon the integrity and fair dealing of the insurer. Under such conditions it is sound law that construes the policy "liberally in favor of insured and strictly against the company." 32 C. J. 1152 and cases cited.

The application provides that the insurance shall "not be in force" until the approval of the application, payment of premium, and delivery of policy—in case the first premium does not accompany the application. The indorsement on the policy says the policy year and insurance begin at a date prior to the approval of the application, payment of premium, and delivery. The indorsement might have been made applicable to any date of or after approval. The application further reads that it "shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins." The application is incorporated in the policy as part thereof. Construing "in force" and "become effective" as having

the like meaning, there is ambiguity. Upon the proofs in the case, however, there is not such ambiguity as justifies the construction claimed on behalf of plaintiff.

My reasons for this conclusion are:

(1) In the application, deceased asked the privilege to pay the premium quarter-annually;

(2) The policy in hæc verba provides for payment of premium: "If payable quarterly, $46.15 upon delivery of the policy, and a like amount on the 21st day of each July, October, January and April thereafter."

(3) With the exception of the premium payment in question and the premium payment due in April, 1932, every premium payment was made within the grace period figured from the 21st instant April, July, October, and January of each year.

(4) Insured applied for reinstatement of the policy on his failure to pay the April, 1932, premium payment with knowledge that the payment was due before the expiration of three months dating from the date of the issuance of the policy.

Assuming the premium dates ran from the date of the policy, the grace period expired or ran May 28, 1932. The check for reinstatement was made on June 1, 1932, and the basis for it was that the policy had expired.

(5) On July 6, 1932, notice of the due date of the July 21, 1932, premium was mailed insured. That notice stated, in effect, that the premium payment would be due July 21, 1932, and that it could be made before that date or within the grace period.

(6) The fact that insured on the 24th of August, as claimed by plaintiff, mailed the premium check dated August 20, 1932, is some evidence, when considered in connection with other evidence in the case, that insured knew the grace period had then expired.

(7) Insured has had possession of the policy for upwards of six years. The indorsement aforesaid on the face of the policy remained unchanged. The reasonable presumption must be that deceased knew the language of that indorsement.

(8) There is no legal reason why the commencement date for the computation of quarter annual payments of premium could not be made as of a date preceding the date of the execution of the policy. While insured may have been deprived of six days' insurance, he was entitled to different benefit based in part on that period. Such benefits include increase in cash and loan values, acceleration

of dividend payments, and the running of incontestable provisions. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Schwartz v. Northern Life Ins. Co. (C. C. A.) 25 F.(2d) 555.

(9) The fixing of some arbitrary date as the date from which premium payments were to be determined was a practical necessity and a reasonable provision.

While the application is made a part of the policy, the policy in its entirety is the controlling agreement. There is no conflict as regards the due date of premiums. These were specifically fixed in the policy. There is no confusion in the language employed. The quarterly premium became payable "on the 21st day of each July, October, January and April thereafter." Beyond cavil insured knew of this provision. There was no confusion in his mind. It would take something of more weight than some possible ambiguity as to when the insurance became effective to overcome these definite provisions of the policy.

It is my opinion that the policy lapsed on August 22, 1932. This view seems to me to be supported by a long line of cases so definitely parallel as to remove any ground for doubt. New York Life Ins. Co. v. Tolbert (C. C. A.) 55 F.(2d) 10, certiorari denied 285 U. S. 551, 52 S. Ct. 407, 76 L. Ed. 941; New York Life Ins. Co. v. Silverstein (C. C. A.) 53 F.(2d) 986; New York Life Ins. Co. v. Cohen (D. C.) 48 F.(2d) 903; Sellars v. Continental Life Ins. Co. (C. C. A.) 30 F. (2d) 42; Swayze v. Mutual Life Ins. Co. (D. C.) 32 F.(2d) 787; Johnson v. Mutual Benefit Life Ins. Co. (C. C. A.) 143 F. 950; McConnell v. Provident Savings Life Assur. Soc. (C. C. A.) 92 F. 769. There are also many decisions to the same effect in the state courts. Pladwell v. Travelers' Insurance Co., 134 Misc. 205, 234 N. Y. S. 287 (affirmed 225 App. Div. 663, 231 N. Y. S. 856) Mougey v. Union Central L. Ins. Co., 123 Ohio St. 595, 176 N. E. 455; McDonough v. Prudential Ins. Co., 85 Pa. Super. Ct. 63; Forch v. Western Life Indemnity Co., 157 Ill. App. 244; Tibbits v. Mutual Benefit L. Ins. Co., 159 Ind. 671, 65 N. E. 1033.

Plaintiff lays special stress on the McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64, case in which the court held that the premium payment date was to be reckoned from the date of the delivery of the policy and the payment of the first premium, despite the fact that the policy was dated back to the time of the application. It was found that it was thus dated at the request of the agent and without the knowledge of the insured. It was found that it was done despite the statement of the agent to the insured that the policy could not be forfeited until the expiration of thirteen months from the time when issued. It appeared that the insured did not know of this provision in the policy. The facts are in no way comparable with the facts here. The decision in McMaster v. New York Life Insurance Company, supra, is not an authority for the contention that the premium due date herein ran from the date of the policy or its issuance and the payment of the first premium. McMaster v. New York Life Insurance Company has been clearly distinguished in these cases from the one at bar: New York Life Ins. Co. v. Tolbert, supra; McCampbell v. New York Life Ins. Co. (C. C. A.) 288 F. 465; Johnson v. Mutual Benefit Life Ins. Co. (C. C. A.) 143 F. 950; Union Central Life Ins. Co. v. Harvey, 283 U. S. 829, 51 S. Ct. 353, 75 L. Ed. 1442; Schwartz v. Northern Life Ins. Co. (C. C. A.) 25 F.(2d) 555; Whitney v. Union Central Life Ins. Co. (C. C. A.) 47 F.(2d) 861; Davern v. American M. L. Ins. Co., 241 N. Y. 318, 150 N. E. 129, 43 A. L. R. 522. I find nothing in Stinchcombe v. New York Life Ins. Co., 46 Or. 316, 80 P. 213; Stramback v. Fidelity Mutual Life Insurance Co., 94 Minn. 281, 102 N. W. 731; Halsey v. American Cent. Life Ins. Co., 258 Mo. 659, 167 S. W. 951; Northern Life Ins. Co. v. Schwartz (D. C.) 19 F.(2d) 142; Whitney v. Union Central Life Ins. Co. (C. C. A.) 47 F.(2d) 861, and the other cases cited by the plaintiff, conflicting with these views.

It is my conclusion that the policy of insurance in this case lapsed on August 22, 1932. The plaintiff is therefore entitled to recover only the aforesaid sum of $1,261.94.

Findings and decree may be submitted.