# FIRST NATIONAL BANK OF HASTINGS AND ANOTHER v. NEW YORK LIFE INSURANCE COMPANY.[1]

No. 29,740.

July 6, 1934.

S. B. Wilson, Raymond N. Klass, and John P. J. Dolan, for appellants.

Doherty, Rumble, Bunn & Butler, for respondent.

[1]Reported in 255 N. W. 831, 258 N. W. 13, 592.

610

*LORING, Justice.*

In an action upon a life insurance policy the defendant had a directed verdict, and the plaintiffs come here on appeal from an order denying their motion for judgment notwithstanding the verdict or a new trial.

Born October 14, 1893, the insurable age of George Seckosan changed from 34 to 35 on April 14, 1928. April 1, 1928, he applied to defendant for life insurance in the sum of $3,000 with disability features and double indemnity for accidental death. By his application he asked that the policy be dated April 1, 1928. He gave his note due May 1, 1928, for the first premium. This note was paid about June 20, 1928. The policy was delivered to him some time before May 1, 1928, and by it the defendant acknowledged receipt of the first premium, which amounted to $25.53 "maintaining this policy for the period terminating on the first day of July, 1928." The second premium of $96.27 was due by the terms of the policy July 1, 1928, and a like annual premium was required on each following July 1. A month's grace was allowed for the payment of premiums subsequent to the first. It was provided in the policy that it "and the application therefor" should constitute the entire contract. The policy was dated April 7, 1928, and provided:

"This policy takes effect as of the first day of April, 1928, which day is the anniversary of the policy."

The application, provided by the company, gave the applicant a choice as to whether the policy should be dated when written or as of the date of the application. It also provided that the insurance should not take effect,

"unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime * * * provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium * * * and receives from the agent a receipt therefor * * * and if the company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable * * * at the com-

pany's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not. * * * That by receiving and accepting said policy, any additions or amendments hereto which the company may make and refer to in question 9 above entitled 'Additions or Amendments' are hereby ratified."

June 16, 1928, the defendant mailed notice to Seckosan of the premium due July 1. This premium was not paid, and the insured died August 10, 1928, it is alleged from accidental means. By order of the probate court a one-twentieth interest in the policy was assigned to the plaintiff McFadden. The question presented by this appeal is, when was the second premium due?

The plaintiffs contend that by the terms of the application the insurance did not take effect until the first premium was paid in cash and that, since Seckosan's note was not paid until about June 20, the second premium did not become due July 1 following but became due a full quarter after June 20, and that consequently the insurance was in force when Seckosan died.

We take first the provisions of the application. It provides that the insurance shall not take effect until the policy is delivered and the premium paid, but at the same time the company in the application gives the applicant a choice as to when he shall have his policy dated. Apparently the choice made should depend upon whether payment is made with the application or left until delivery. Seckosan chose the date of the application, and the company conformed to his request and accepted his note. True, the note he gave was not paid until after delivery of the policy; but a note may legitimately be received in payment of a premium, and this one was receipted for in the policy as payment. Coughlin v. Reliance L. Ins. Co. 161 Minn. 446, 201 N. W. 920; Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861. The statute, 1 Mason Minn. St. 1927, § 3406(3), forbids a provision in a policy which purports to effectuate insurance prior to the date of the application if thereby

the assured would rate at an age younger than his age at the date of his application. But here there was no attempt to circumvent that statute. The parties contracted that the insurance should become effective as of the date of the application. At the time of the delivery of the policy the note was treated by both parties as payment and the policy dated to take effect as requested. Applicant evidently erred in the computation of his age, but this was corrected by the company as provided under question 9 of the application. His insurable age was soon to change, and that no doubt accounts for the selection of the date of application as the time he wanted the policy dated. Applicant thereby gained the advantage of a lower premium rate. There would also be a factor advantageous to him on the accumulations. Presumably the choice was deliberate and well considered in view of applicant's normal expectation of life. In a short time the lower premium would make up for the period between the date of the application and the delivery of the policy, when it is conceded by defendant he would not be covered. The lower premium was ample consideration for the shortened period of effective insurance. Johnson v. Mutual B. L. Ins. Co. (C. C. A.) 143 F. 950.

Influenced by these various considerations, the parties definitely contracted that the policy should date from April 1. That date was requested in the application. It was so stated in the policy as accepted. The note was receipted as payment. The parties deliberately made a contract, and unless that contract was forbidden by law it must stand. They might fix the date for the payment of premiums as long as they did not violate some statutory requirement such as that premiums must be paid in advance. Tibbits v. Mutual B. L. Ins. Co. 159 Ind. 671, 65 N. E. 1033.

That in the absence of statute parties may so contract and that such a contract fixes the due date of premiums we regard as no longer an open question in this state. In Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, the policy applied for September 28 was, at applicant's request, dated October 5, 1923, delivered October 8, and the first premium paid November 18 of that year. By the terms of the policy October 5 was the date

from which the insurance became effective although the application contained a provision that it should not be effective until the first premium was paid, as well as a request that it be made effective from date of approval. Examination of the briefs discloses that it was earnestly contended there as here that the insurance did not become effective until November 18, and, if so, was still in force at the time of death. This court held that the provisions of the contract made October 5 the effective date and that the policy had lapsed at the time of death. The opinion in that case is largely devoted to other points, but this question was squarely presented to the trial court and raised by the briefs in this court. It, with other questions, was disposed of in the last paragraph of the opinion. This court indicated the same view in Stramback v. Fidelity Mut. L. Ins. Co. 94 Minn. 281, 102 N. W. 731. Other cases to the same effect are Prange v. International L. Ins. Co. 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950; Craig v. Golden Rule L. Ins. Co. 184 Ark. 48, 41 S. W. (2d) 769; McDaniel v. Missouri State L. Ins. Co. 185 Ark. 1160, 51 S. W. (2d) 981; Methvin v. Fidelity Mut. L. Assn. 129 Cal. 251, 61 P. 1112; Tibbits v. Mutual B. L. Ins. Co. 159 Ind. 671, 65 N. E. 1033; Painter v. Massachusetts Mut. L. Ins. Co. 77 Ind. App. 34, 133 N. E. 20; Tigg v. Register L. & A. Ins. Co. 152 Iowa, 720, 133 N. W. 322; Wolford v. National L. Ins. Co. 114 Kan. 411, 219 P. 263, 32 A. L. R. 1248; Wilkinson v. Commonwealth L. Ins. Co. 176 Ky. 833, 197 S. W. 557, 6 A. L. R. 769; Jewett v. N. W. Nat. L. Ins. Co. 149 Mich. 79, 112 N. W. 734; Wilkie v. New York Mut. L. Ins. Co. 146 N. C. 513, 60 S. E. 427; Pladwell v. Travelers Ins. Co. 134 Misc. 205, 234 N. Y. S. 287; affirmed, 231 N. Y. S. 856; Mougey v. Union Cent. L. Ins. Co. 123 Ohio St. 595, 176 N. E. 455; McKenney v. Phoenix Mut. L. Ins. Co. 138 Wash. 315, 244 P. 560; Sellars v. Continental L. Ins. Co. (C. C. A.) 30 F. (2d) 42; McCampbell v. New York L. Ins. Co. (C. C. A.) 288 F. 465; New York L. Ins. Co. v. Silverstein (C. C. A.) 53 F. (2d) 986; Johnson v. Mutual B. L. Ins. Co. (C. C. A.) 143 F. 950; New York L. Ins. Co. v. Tolbert (C. C. A.) 55 F. (2d) 10.

The plaintiffs rely largely upon Zemler v. New York L. Ins. Co. 177 Minn. 273, 225 N. W. 81, but in that case there was no delivery

of the policy or payment in cash according to the provisions of the application, and therefore it was not in force at the time of the death of the insured. In Lueck v. New York L. Ins. Co. 185 Minn. 184, 240 N. W. 363, it was held that payment in cash on the day following the application was substantial compliance with that part of the application which made the insurance effective from that date notwithstanding the nondelivery of the policy. Newsom v. New York L. Ins. Co. (C. C. A.) 60 F. (2d) 241, was a case where the policies were not delivered and the giving of a note was held not to be payment in cash under the proviso in the application relating to such payment. In Stramback v. Fidelity Mut. L. Ins. Co. 94 Minn. 281, 285, 102 N. W. 731, 732, both the application and the policy were silent as to the date from which the policy should commence to run, and this court commented:

"It would have been a very easy matter to insert a clause to the effect that the policy should take effect from its date, if such was the intention of the insurer, and, in the absence of any such provision or agreement on the part of the insured, the following provision should control: 'The application, copy of which is given on third page, forms the sole basis of this contract which shall not be operative or binding until the actual payment of the initial premium and delivery of the policy during the lifetime and good health of the insured.' "

McMaster v. New York L. Ins. Co. 183 U. S. 25, 22 S. Ct. 10, 15, 46 L. ed. 64, went off on the point that after its execution by the insured and without his consent or knowledge the agent of the company inserted in the application: "Please date policy same as application." Policies were reformed to change the due date of the premiums from December 12, 1893, to December 18, 1893, and, a grace of one month being provided for, the insured, who died on January 18, 1895, was then covered by the grace period, although the premium due December 18, 1894, had not been paid.

We hold that the contract made by the parties required the second premium to be paid on July 1; that the reduced annual premium fixed by dating the policy April 1 was consideration for the pay-

ment of the higher rate for the coverage prior to July 1. Such was obviously the intent of the parties, and we may not rewrite the contract for them.

■ Nor do we see discrimination in violation of our 1 Mason Minn. St. 1927, §§ 3376-3377.* It is not forbidden to date the policy as of the date of the application. To have dated it on a day subsequent to applicant's change of age would have been to discriminate in his favor. There was no mistake as to his age after the company corrected it under question 9 of the application. Hence there was no occasion to invoke the provision for insurance proportionate to the premium at the correct age. The defendant, knowing his age, insured applicant at the rate applicable to age 34.

---

*"3376. No company or agent, all other conditions being equal, shall make any discrimination in the acceptance of risks, in rates, premiums, dividends, or benefits of any kind, or by way of rebates, between persons of the same class, nor on account of race; and upon request of any person whose application has been rejected, the company shall furnish him in writing the reasons therefor, including a certificate of the examining physician that such rejection was not for any racial cause. Every company violating either of the foregoing provisions shall forfeit not less than five hundred dollars nor more than one thousand dollars, and every officer, agent, or solicitor violating the same shall be guilty of a gross misdemeanor; and the commissioner shall revoke the license of such company and its agents, and grant no new license within one year thereafter.

"3377. No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between the insurants (the insured) of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued (thereon) thereof; nor shall any such company or any officer, agent, solicitor or representative thereof pay, allow or give or offer to pay, allow or give directly or indirectly, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon or any paid employment or contract for services of any kind or any valuable consideration or inducement whatever not specified in the policy contract of insurance."

In order not to discriminate against others, the insurance must be paid for as from a date when applicant was 34. Prange v. International L. Ins. Co. 329 Mo. 651, 46 S. W. (2d) 523. The same contract was open to any other eligible of Seckosan's age.

Order affirmed.

AFTER REARGUMENT.

On January 4, 1935, the following opinion was filed:

LORING, Justice.

We adhere to our former decision. However, we may have inadvertently given the impression that the coverage took effect from the date of the policy. It was not our intention to say that the policy took effect from April 1, 1928, the date when by its language it stated that it was effective. Under our holdings, where the first premium was not paid in cash, it would not take effect until delivery of the policy acknowledging receipt of the first premium. We do not here determine whether that occurred when the policy was mailed to the agents for delivery or when it was actually delivered to the insured. That is immaterial here. The second premium was by the terms of the contract due July 1.

ON SECOND APPLICATION FOR REARGUMENT.

On February 15, 1935, the following opinion was filed:

PER CURIAM.

With commendable zeal and candor the appellant has again moved for reargument and has admitted inability to understand our holding in this case. To clarify any confusion that may exist, our opinion holds that Seckosan did not get a full quarter's coverage for the first quarterly premium because the insurance did not take effect until delivery of the policy with its admission of receipt of the first premium; that the consideration for the higher rate from delivery of the policy to July 1 was the lower rate and other benefits given him for the remainder of his expectancy due to his change in age; that this was not a discrimination because the same arrangement was open to other applicants of the same age under the same circumstances; that the parties were consequently free to contract that the second premium should be due July 1, 1928.

Petition denied.