## ANNIE JUSTER v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.[1]

April 26, 1935.

No. 30,344.

*Snyder, Gale & Richards,* for appellant.
*Ell M. Roston* and *Max Shapiro,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff, the beneficiary named in a policy of life insurance issued by defendant upon the life of her husband, brought this action to recover the amount of insurance promised thereby. When the parties rested each moved for an instructed verdict. Defend-

[1]Reported in 260 N. W. 493.

ant's motion was based "upon the ground that * * * it conclusively appears as a matter of law that the policy lapsed for nonpayment of the third instalment of the first annual premium which was due on September 7, 1933, and was at no time paid, it appearing that the date of death, October 23rd, was more than 31 days after the due-date of the third instalment and therefore was beyond the grace period." Defendant's motion was denied and that of plaintiff granted because, in the language of the court:

"It appears in the case on trial that the policy of insurance was dated March 7, 1933; that it was delivered to the assured and the quarterly premium paid by him to the insurance company on April 7, 1933; two quarterly premiums were paid. The question in this case is, when did the policy take effect—as of its date, or as of the date of delivery and payment of the first premium? If the policy took effect on its date, March 7th, it was lapsed, the assured having died on October 23rd, after the time for which the second premium was paid. If it takes effect on April 7th the policy is still in force, the third premium being due on October 7, 1933, and under the terms of the policy he was permitted 31 days of grace in which to pay the premium. Quite against my own opinion on this question of law I feel I am constrained to follow the holding of the supreme court" in Stramback v. Fidelity Mut. L. Ins. Co. 94 Minn. 281, 102 N. W. 731, 732.

Defendant moved for judgment notwithstanding or a new trial. This being denied, defendant appeals.

The insured, then of the age of 52 years, in February, 1933, applied to the defendant for a $2,000 life insurance policy known as "endowment at 85." The application was attached to and made a part of the policy and provided:

"It is Understood and Agreed: * * * That if payment of the premium above stated has been made with this application, the insurance * * * if the application is approved at the Home Office of the Company, shall be in force from the date of * * * this application, * * * that if payment of the premium has not been made with this application, any policy which may be issued

hereon shall take effect only * * * in the event that it shall be delivered to and actually received by me and the first premium or instalment thereof actually paid * * * and that whether the premium is paid with the application or otherwise, delivery and payment shall constitute an acceptance of the policy and of all its conditions."

The policy was dated and written by the company on March 7, 1933, and was delivered to and accepted by the insured April 7, 1933, at which time he paid the first quarterly instalment of the annual premium. The next quarterly instalment was paid on June 12, 1933. The insured died October 23, 1933, without having made any other or further payments. The policy specifically provided that March 7, 1933, was the date of its issue and that subsequent premiums should be paid "on or before the seventh day of March in each succeeding year"; that it was to be incontestable after it had been in force "for two years from its date of issue" (except for nonpayment of premiums) ; that at the "end of each policy year" the divisible surplus should be distributed. Other provisions, such as policy loans, extended term insurance, the right to exchange the policy to other forms of insurance written by defendant, all definitely point to and designate as the effective date March 7, 1933, and that "the payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the succeeding premium or instalment becomes payable." When the insured made the first quarterly payment he was given a receipt which stated that the due date of the first premium was March 7, 1933, and that the premium was for three months.

It is clear that the policy did not become an effective contract until it was delivered to the insured and the first quarterly premium paid. That was fixed as a matter of contract. So the question resolves itself into this: May parties by contract fix and definitely determine the due date of subsequent premium payments? Obviously, the parties herein agreed upon a definite premium payment date, March 7 of each year. (If semi-annual or quarterly payments were to be made instead of the annual prepayment, the same method of computing time would necessarily obtain.) There

can be no doubt that such agreement is valid, absent statutory prohibition. Thus in Whitney v. Union Cent. L. Ins. Co. (C. C. A.) 47 F. (2d) 861, 864, 865, the court said:

"That the effective date of an insurance contract may be antedated to cover the period during which no risk is assumed by the insurer is without question. There is no reason why parties cannot agree that a policy may be antedated, and that the policy shall take effect from said date agreed upon, for a policy of insurance is a voluntary contract. Nearly any kind of an agreement that is not contrary to law or public policy may be included therein. An insurer may impose such conditions as it desires and the insured can take them or go without the policy, as it may choose. * * * Under the terms of the policy certain privileges and benefits are provided with reference to the policy anniversary. These benefits are based upon the premiums paid. The surrender values and loan values depend upon the anniversary year of the policy. We think these provisions relate entirely to settlements and amounts to be paid, and have nothing to do with the time when the insurance contract goes into effect."

Cantey v. Philadelphia L. Ins. Co. 166 S. C. 181, 164 S. E. 609; Moreau v. Massachusetts Mut. L. Ins. Co. (D. C.) 7 F. Supp. 102; McCampbell v. New York L. Ins. Co. (C. C. A.) 288 F. 465. And in Williams v. Union Cent. L. Ins. Co. 291 U. S. 170, 180, 54 S. Ct. 348, 352, 78 L. ed. 711, 718, 92 A. L. R. 693, Chief Justice Hughes, speaking for a unanimous court, said:

"As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

In First Nat. Bank v. New York L. Ins. Co. 192 Minn. 609, 612, 255 N. W. 831, 833, 258 N. W. 13, 592, we held: "That in the absence of statute parties may so contract [fix the date for payment of premium] and that such a contract fixes the due date of premiums we regard as no longer an open question in this state." Citing Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739, and many other cases.

The facts in the Stramback case, 94 Minn. 281, 102 N. W. 731, are distinguishable from those of the instant case. There the application formed the "sole basis" of the contract, and the policy was to "continue in force only for the period actually paid." In view of these provisions the court said [94 Minn. 285]: "It would have been a very easy matter to insert a clause to the effect that the policy should take effect from its date, if such was the intention of the insurer, * * *." But we think the reasons stated in the dissenting opinion therein are more cogent and persuasive than those of the majority opinion. Our subsequent cases bearing upon this phase have virtually made for naught the authority of that decision, and it should be and is overruled.

It follows that order here for review must be reversed and judgment ordered for defendant notwithstanding the verdict.

Reversed and remanded accordingly.